UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL M. DUMAS,

    Plaintiff,

v.

FEDERAL EXPRESS CORPORATION,

    Defendant.

                                        /

Case No. 03-72402

Honorable Nancy G. Edmunds

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [11]**

    This matter comes before the Court on Defendant's motion for summary judgment. Plaintiff, Darryl Dumas, filed this action against his former employer, Federal Express Corporation ("FedEx"), alleging that FedEx discriminated against him because of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and under the Michigan Elliot-Larsen Civil Rights Act ("MELCRA"), M.C.L. § 37.2101 *et seq.* He also alleges that FedEx retaliated against him for a prior race discrimination lawsuit he brought against FedEx. For the reasons more fully explained below, the Court GRANTS Defendant's motion as to Plaintiff's state law claims because they are untimely, and also GRANTS Defendant's motion as to Plaintiff's federal claims.

**I.    Facts**

    Dumas began working for FedEx on March 1, 1993. (Dumas Dep. at 10, attached as Def. Ex. A.) In the course of applying for a position with FedEx, Dumas completed and signed an Application for Employment. (Application for Employment, Def. Ex. B.) The last

paragraph of the application, directly above Dumas' signature, states: "To the extent the law allows an employee to bring legal action against Federal Express, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first."

Dumas' first position was a Handler, and then he became a Courier.  A Courier is a driving position.  (Dumas Dep. at 22.)  On November 5, 1999, Dumas filed a Complaint in Washtenaw County Circuit Court alleging that his manager discriminated against him based on his race by not approving a transfer from FedEx's Romulus location to a location in Ann Arbor.  (Dumas Dep. at 47-48.)  The parties settled the case within one year for $30,000.  (Dumas Dep. at 48.)

On July 7, 2002, the Van Buren Township Police Department issued Dumas citations for operating a vehicle under the influence of alcohol, open intoxication, and speeding.  (Uniform Law Citation, attached as Def. Ex. E; Dumas Dep. at 53.)  According to FedEx's *People Manual*, if an employee in a driving position receives a citation for driving a motor vehicle under the influence of alcohol, whether while working or not, FedEx removes the employee from his driving position.  (*People Manual* at 213-14, attached as Def. Ex. F.) In accordance with this policy, Dumas' manager, Sam Minnis, suspended Dumas with pay on July 9, 2002, pending an internal investigation.  (Letter dated July 9, 2002, attached as Def. Ex. H.; Dumas Dep. at 57.)

Dumas returned to work a week later, on July 15, 2002, but he was not permitted to drive.  He still earned pay as a Courier but he acted as a "jumper." (Dumas Dep. at 58, 75-76.)  A jumper rides as a passenger in a FedEx delivery truck and helps the Courier navigate or unload/load the truck.  (Minnis Dep. at 32; Bill Dep. at 33, 38; Dumas Dep. at

79.) FedEx does not recognize a jumper as a separate position like a Courier or Handler; rather, persons with other job titles from time to time act as jumpers. (Minnis Dep at 31.)

According to FedEx's Driving Qualifications policy, an employee in a driving position who has been convicted of his first driving while intoxicated offense can either be placed in an open non-driving position within his location, if one is available, or he has a 90-day leave of absence to apply for other non-driving positions within FedEx. If the employee cannot locate another non-driving position within 90 days, he is terminated. (*People Manual* at 214; Dumas Dep. at 61.)

On July 19, 2002, Senior Safety Specialist Michael Bill noticed that Dumas was still a Courier. (Bill Dep. at 27; email dated July 19, 2002, attached as Def. Ex. K.) In an e-mail from Bill to Minnis, Bill instructed Minnis that Dumas should not still be a Courier even if he was not actually driving. Rather, Minnis should place Dumas on a personal leave of absence or placed in a non-driving position. (Def. Ex. K.) Bill also wrote: "Please refrain from creating work for him. This creates problems and Darryl has a propensity for lawyers . . . ." *Id.*

On August 23, 2002, Dumas was still a Courier, and Bill reminded Dumas' supervisors to place Dumas in a non-driving position, and to prohibit Dumas from driving FedEx vehicles. (Email dated Aug. 23, 2002, attached as Def. Ex. L.) A week later, on August 29, 2002, Bill again reminded the supervisors that Dumas had to be placed in a non-driving position. *Id.* He also wrote: "it's going to blow up if you don't do it soon. This guy is magnetic when it comes to making trouble." *Id.*

There were no open full-time non-driving positions in Dumas' location at the time. (Minnis Dep. at 48.) The only available position was a part-time Handler position. *Id.* at

47.  Minnis offered Dumas the position on September 5, 2002.  (Minnis Dep. at 45; Letter dated September 5, 2002, attached as Def. Ex. M.)  Part of the letter stated: "As a condition of acceptance you will be ineligible to apply for other positions outside the DTWA Station for a period of 12 months from your start date."  *Id.*  Dumas accepted the part-time position on September 6, 2002.  Three other employees incurred drunk driving infractions during this same general time frame, but the Court will recite their specific circumstances in the analysis section of this Opinion.

Within several months of working in this part-time position, FedEx reduced his hours so significantly that he took a second job.  (Dumas Aff., attached as Pl. Ex. A.)  He ultimately quit his job at Federal Express.  *Id.*

On June 20, 2003, Dumas filed a six count complaint against FedEx alleging violations of :

(1) Title VII (Intentional Discrimination);

(2) Title VII (Disparate Treatment);

(3) Title VII (Retaliation);

(4) MELCRA (Intentional Discrimination);

(5) MELCRA (Disparate Treatment);

(6) MELCRA (Retaliatory Discharge).

## II.    Standard for Summary Judgment

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as

a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party.  *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

**III.   Analysis**

    **A.  Timeliness of the Complaint**

All of the events that give rise to Plaintiff's suit occurred between August and October of 2002.  FedEx switched Plaintiff from the full-time Courier position to a part-time Handler position with a lesser rate of pay on August 25, 2002.  (Ex. M.)  On September 6, 2002, he accepted that position.  *Id.*  FedEx then reduced his hours further to about 3 hours a day sometime before October 4, 2002.  (Dumas Dep. at 10, 97.)  Plaintiff filed this suit on June 20, 2003, more than six months beyond any of these events.  Therefore, Defendant argues

that the six month limitation on actions in his employment application requires this Court to dismiss his state law and federal law claims. Plaintiff responds that as to his federal claims, a court cannot enforce an employment contract to reduce the time to bring legal action where such a contract would prevent a Plaintiff from bringing a Title VII claim, and that is the case here. As to his state claims, he argues that any contractual limitation on the timing of claims must be reasonable, and this one is not.

### 1. Federal Claims

Filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and obtaining a right to sue letter from the EEOC are prerequisites to filing a Title VII suit in federal court. *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031-32 (6th Cir. 1998). Pursuant to 42 U.S.C. § 2000e-5(e)(1), an individual must file a charge within the statutory time period (180 days from the allegedly unlawful practice) and serve notice upon the person against whom the charge is made. *Amtrak v. Morgan*, 536 U.S. 101 (2002). After receiving the charge, if the EEOC chooses not to file suit on behalf of the government, then it issues a right to sue letter to the complainant. *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 455 (6th Cir. 1999). The complainant may request a right to sue letter from the EEOC if the EEOC fails to make a determination after 180 days. *Id.* at 456.

In this case, Plaintiff switched to a part-time position on September 6, 2002, and his hours were significantly reduced sometime before October 4, 2002[1]. Plaintiff filed a charge

---

[1] The evidence presented to this Court does not establish the date. Plaintiff testified that he had to take a second job at St. Joseph Mercy Hospital because of the cut in hours, and he started that second job on October 4, 2002. (Dumas Dep. at 10, 97.) The only reasonable inference, therefore, is that FedEx cut his part-time hours before October 4, 2002.

6

of race discrimination and retaliation against Defendant with the EEOC on October 30,

2002.  Plaintiff received his Right to Sue letter from the EEOC on March 25, 2003, just ten

days before the six-month limitation on actions expired.  The Court will not enforce the six

month limitation as to Plaintiff's federal causes of action because in this case, the EEOC

did not issue Plaintiff a right to sue letter until the six months had nearly passed.[2]  The

Court does not offer an opinion as to whether a six month limitation clause is invalid *per se*

as applied to Title VII causes of action, but holds that in this particular case, the

prerequisites for filing a Title VII suit effectively prevented Plaintiff from bringing his federal

causes of action within the six month period.  Therefore, it would be unreasonable to

enforce the six month limitation.

### 2.  State Claims

As to Plaintiff's state law discrimination claims, the above analysis is inapplicable

because Plaintiff is not required to wait for administrative approval before filing suit.

Michigan courts allow parties to contract for a period of limitation shorter than that provided

by statute.  *Camelot Excavating Co., Inc. v. St. Paul Fire and Marine Ins. Co.*, 301 N.W.2d

275, 276 (Mich. 1981).  However, the limitation must be reasonable.  *Id.* at 277.  A limitation

must pass the following three prong test to be reasonable:

(1) the claimant had sufficient opportunity to investigate and file the action;

(2) the time is not so short as to work a practical abrogation of the right of action; and

---

[2]Defendant cites *Wright v. DaimlerChrysler Corp.*, 220 F. Supp. 2d 832 (E.D.Mich. 2002), wherein this Court held a six month contractual limitation on lawsuits by employees against DaimlerChrysler was enforceable against the employee.  That case is distinguishable on the facts because there, the plaintiff did not argue (nor do the facts support the inference) that waiting for her right to sue letter prevented her from filing her federal lawsuit within the six months.

(3) the action is not barred before the loss or damage can be ascertained. *Id.*

Employment contracts in particular may include a limitation on lawsuits shorter than the statutory limitation. *See Herweyer v. Clark Highway Services, Inc.*, 564 N.W.2d 857 (Mich. 1997); *Timko v. Oakwood Custom Coating, Inc.*, 625 N.W.2d 101 (Mich. Ct. App. 2001). However, the Michigan Supreme Court has cautioned that limitations in employment contracts deserve close scrutiny because of the unequal bargaining power of the parties. *Herweyer*, 564 N.W.2d at 860.[3] Therefore, the question for the court is whether the six month limitation is reasonable.

The *Timko* court held that a six month limitation in an employment contract was reasonable. In that case, plaintiff Ernest Timko signed an application for employment with defendant Oakwood Custom Coating ("Oakwood") that included a clause limiting actions or suits arising out of his employment to 180 days after the event giving rise to the claim. *Timko*, 625 N.W.2d at 102-3. Oakwood discharged Timko on February 7, 1997. Timko, in turn, sued Oakwood on March 3, 1998, for unlawful age discrimination. Oakwood moved for summary disposition based on the six month limitation. Timko replied that the limitation should not be enforced because there was no consideration to support the contract, or, alternatively, it was a contract of adhesion. *Id.* at 103. The trial court rejected Timko's arguments, granted Oakwood's motion, and Timko appealed. *Id.*

The Michigan Court of Appeals analyzed the case by first deciding if the limitation was reasonable. The court adopted the reasoning of the Sixth Circuit, which held in *Myers v. Western-Southern Life Ins. Co.*, 849 F.2d 259, 262 (1988), that "[t]here is nothing inherently

---

[3]Terms contained in an employment application become part of the contract for employment. *Timko*, 625 N.W.2d at 106.

unreasonable about a six month limitations period." *Id.* at 105. The court reasoned that "[b]oth Michigan law and federal law provide for six-month or even shorter periods of limitation in the context of various employment actions."[4] *Id.* Because a six month limitation was not inherently unreasonable, and Timko failed to provide any evidence that the specific limitation in his contract was unreasonable, the court concluded that the limitation was reasonable and enforceable. *Id.* at 106.[5] Therefore, under Michigan law, six month limitations in employment contracts are not inherently unreasonable. Rather, each limitation must be evaluated pursuant to the *Camelot* three-prong reasonableness test.

In *Wright v. DaimerChrysler Corp.*, 220 F. Supp. 2d 832 (E.D. Mich. 2002), this Court applied the analysis above to find that a six month limitation was reasonable. In this case, the six month limitation is not inherently unreasonable, and Plaintiff has not shown why it is unreasonable in this particular case. *See. e.g., Krusinksi v. DaimlerChrysler Corp.*, No. 239873, 2004 Mich. App. LEXIS 507, at *2 (Mich. Ct. APP. Feb. 19, 2004) (holding that a six month limitation was a reasonable length of time); *Komejan v. Federal Express Corp.*, No. 1:02-CV-747 (E.D. Mich. April 27, 2004). Therefore, the Court GRANTS Defendant's motion for summary judgment as to the state law claims.

**B. Racial Discrimination Counts**

Plaintiff seeks to show there is a genuine issue of material fact as to Defendant's intentional racial discrimination by direct evidence of racial discrimination and indirect

---

[4]The court cited M.C.L. 423.216(a) (unfair labor practices), M.C.L. 15.363(1) (Whistleblowers' Protection Act), and 9 U.S.C. 160(b) (unfair labor practices).

[5]The court went on to hold that the employment contract was valid and enforceable since it did not lack consideration nor was it a contract of adhesion.

9

evidence of racial discrimination. If there is direct evidence of discriminatory intent, the employer then has the burden of persuasion and production to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination. *Johnson v. Kroger Co.*, No. 01-3432, slip op. at 9 (6th Cir. 2003).

> This court has explained that "direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group.

*Id.*

If there is no direct evidence, Plaintiff may attempt to prove discrimination through circumstantial evidence, or put another way, Plaintiff can show discrimination through Defendant's disparate treatment of him compared to other employees. To establish a prima facie case of disparate treatment race discrimination, Plaintiff must show that (1) he is a member of a protected class, (2) he was subjected to an adverse employment action, (3) he was qualified for the position, and (4) Defendant treated similarly-situated employees not in his protected class more favorably or replaced him by a member outside his class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Reisman v. Regents of Wayne State Univ.*, 470 N.W.2d 678, 685 (Mich. Ct. App. 1991); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002). A prima facie case raises a presumption of discrimination. *Hazle v. Ford Motor Co.*, 68 N.W.2d 515, 521 (Mich. 2001).

If Plaintiff establishes a prima facie case of race discrimination, Defendant must articulate a legitimate, nondiscriminatory reason for its employment decision to rebut the presumption of discrimination. *Id.* If Defendant produces evidence of a nondiscriminatory

10

reason, in order to survive summary judgment, Plaintiff must demonstrate that "the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.' " *Id.* at 522 (quoting *Lytle v. Malady (On Rehearing)*, 579 N.W.2d 906 (Mich. 1998)).

### 1. Direct Evidence

The Sixth Circuit defines direct evidence in an employment discrimination claim as "that evidence, which if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Plaintiff argues that Bill's e-mails are direct evidence of intentional race discrimination because (a) Bill was meaningfully involved in an adverse employment decision against Plaintiff; (b) Bill wrote e-mails that could support the inference that Plaintiff's prior lawsuit was the reason Bill insisted on changing Plaintiff's employment status this time; (c) Bill knew Plaintiff was Black when he wrote the e-mails; (d) there is no dispute that Plaintiff's prior lawsuit was based on allegations of race discrimination; and therefore (e) Plaintiff has enough evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.

Bill's e-mails are not direct evidence of racial discrimination because they do not require a factfinder to conclude that race was a motivating factor. A reasonable factfinder could infer that the e-mail meant Plaintiff should not be afforded special treatment because providing treatment outside of official policy can create legal liability. Therefore, the e-mail does not require the conclusion that race was a motivating factor.

### 2. Circumstantial Evidence/Disparate Treatment

In this case, it is undisputed that Plaintiff is a member of a protected class, was subject to an adverse employment action (demoted from Courier to part-time Handler, and then having his part-time hours reduced), and that he was qualified for the position. In addition to those elements, Plaintiff still must show that for the same or similar conduct he was treated differently from similarly-situated non-minority employees. *Davis v. Monsanto Chemical Co.*, 858 F.2d 345 (6th Cir. 1988). To qualify as "similarly situated" in the disciplinary context, "the plaintiff and the colleagues to whom he seeks to compare himself 'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.' " *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Plaintiff claims that Defendant treated the following three other similarly situated employees more favorably: Nancy Yackel, Walt Beauchamp, and Steve Langley. Nancy Yackel was a Courier for FedEx when she received a DUI in October 1998. (Yackel Dep. at 16, attached as Def. Ex. O.) Her supervisor was Dennis Hollingsworth. *Id.* at 10. Yackel immediately notified FedEx of her offense, and FedEx suspended her with pay pending investigation. She was then removed from her driving position. *Id.* at 17, 25. According to FedEx policy, Yackel had 90 days to find a non-driving position within the company. *Id.* at 18. At the time, there were two part-time Handler positions open - one for the morning shift and one for the evening shift. *Id.* Yackel took both positions, working in the morning and then coming back in the evening. *Id.* at 19, 21. FedEx paid her less as

a Handler than as a Courier. *Id.* at 23. The offer letter Yackel signed contained a time-in-department requirement of 24 months. *Id.* at 27-28. Three years later, after Yackel was again qualified for a driving position, she had to bid on a Courier position. She was third in the ranking for that position, but the first two applicants declined the offer, and Yackel accepted it. *Id.* at 31-33.

Walt Beauchamp was a Courier for FedEx in 2002. In March or April of 2002, Beauchamp had his fourth accident within 18 months. (Beauchamp Dep. at 7, attached as Def. Ex. J.) His supervisor was Angela Wolfgang. *Id.* at 10. FedEx suspended him with pay pending an investigation, and removed him from his driving position. *Id.* at 10-12. Beauchamp knew he had to look for a new position, and he asked whether anything was available at that location. He was told there was a Handler position open. *Id.* at 12. He accepted the position the same day. *Id.* at 14.

Steve Langley was a Courier from 1992 until he was charged with operating a vehicle under the influence of alcohol in March 1999. (Langley Decl. ¶ 2-3.) At the time, his supervisor was Martin Guzzetta. FedEx suspended him with pay pending investigation, and removed him from his driving position. *Id.* at ¶ 3. Langley bid on a Dispatch position, but was not offered the position. *Id.* at ¶ 4. Later, Langley bid on a part-time Customer Service Agent position, and obtained that position in June, 1999. *Id.* at ¶ 5.

Plaintiff claims that FedEx treated each of these three co-workers better because Bill did not notify any of their supervisors that they were not to work as jumpers or not to create work for them. (Bill Dep. at 62-64, 66, 68-73.) Furthermore, two of the three co-workers were offered full-time work following their drunk driving citations.

13

The fact that Defendant offered two of the other employees full-time positions is not evidence of discrimination where each was suspended with pay pending an investigation; each was removed from a driving position; each had the options of taking an available position at that location or take 90 days to find a position elsewhere in the company; and one of the three ended up with a part-time position, just like Plaintiff. Even the full-time employees took lower paying positions than the employees' former Courier positions. That two of the other employees received full-time positions is evidence of lucky timing, but not of discrimination.

The fact that Bill did not send e-mails to those three employees' supervisors does not indicate disparate treatment; rather, it is only a reflection of the fact that those employees were more quickly removed from their Courier (driver) positions and therefore their supervisors needed no such reminders.

Likewise, the fact that his hours were cut to an unsustainable level after he began the part-time position likewise does not represent different treatment because Plaintiff has not shown that FedEx did not reduce the hours of the other part-time Handlers during the same time frame.

Even if Plaintiff did articulate a *prima facie* case of discrimination, the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for the employee's treatment. *See McDonnell Douglas*, 411 U.S. at 802.

Defendant claims that the reduction in Plaintiff's hours was a product of Plaintiff's new part-time position and that he was not offered a full-time position because none were available at his location. Once Defendant articulates a legitimate, non-discriminatory reason, Plaintiff must demonstrate that Defendant's proffered reasons are merely

14

pretextual for illegal discrimination. *Id.* at 804-805. Plaintiff must show "that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the discharge." *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 729 (6th Cir. 1999). A plaintiff does not meet this burden of persuasion by merely denying the defendant's proffered reason without producing substantiation. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992).

Plaintiff has not presented any evidence showing that the articulated reason has no basis in fact, that it did not in fact motivate the discharge, or that they were insufficient to motivate the discharge. Defendant's undisputed evidence shows that there was not a full time position available when Plaintiff was removed from his Courier position. Therefore, even if Plaintiff has a *prima facie* case of discrimination, Defendant had a non-discriminatory reason for placing Plaintiff in a part time position, and Plaintiff has not come forward with any evidence demonstrating that the reason is merely pretext for discrimination.

### C. Retaliation

42 U.S.C. § 2000e-3(a) of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Like his race discrimination claim, Plaintiff may prove unlawful retaliation by direct evidence or circumstantial evidence. "Direct evidence is that evidence which, if believed, *requires* the conclusion that unlawful retaliation was a motivating factor in the employer's action."

*Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003) (emphasis in original).

Plaintiff argues that the e-mails from Bill to Plaintiff's immediate supervisors is direct evidence of retaliation. Bill testified that he knew Plaintiff had made a complaint of race discrimination within the last few years. (Bill Dep. at 15, 18.) A plain reading of the e-mails does not require the conclusion that the adverse action demanded was punishment for Plaintiff's prior lawsuit. As mentioned above, a reasonable reading could be that providing more favorable treatment than policy required to some employees could create legal liability for FedEx.

In the absence of direct evidence, Plaintiff must establish a *prima facie* case of retaliation. To do so, he must show that: (1) he previously engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by Defendant; (3) that, thereafter, Defendant took an employment action adverse to Plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Abbott*, 348 F.3d at 542. If Plaintiff succeeds, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *Id.* The burden then shifts back to Plaintiff to demonstrate that the articulated reason has no basis in fact, did not actually motivate the adverse action, or was insufficient to motivate the adverse action. *Id.*

As for Plaintiff's *prima facie* case, the parties dispute only the fourth prong:[6] Defendant claims there is no causal connection between the protected activity and the adverse employment actions. "To establish the causal connection that the fourth prong requires,

---

[6] Bill admitted at his deposition that he knew Plaintiff had previously filed a discrimination complaint against Defendant. (Bill Dep. at 14-15, 18.)

16

the plaintiff must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects." *Id.* at 543. The causal connection can be established by a close temporal proximity between the protected activity and the adverse action, *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004), but a longer time separating the two events will not necessarily destroy an inference of causation if there is other evidence of causation. *Abbott*, 348 F.3d at 544.

Bill's e-mail, the only evidence that could create a question of fact as to causation, does not. The only reasonable inference from the e-mail is that Defendant was concerned about legal liability if it treated some employees according to policy and some outside of policy. As to Defendant's reduction of Plaintiff's hours once he was a part-time handler, Plaintiff has not come forward with any evidence showing any causal connection between his past lawsuit and that adverse action. Therefore, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's federal retaliation claim.

### D. Defendant's Motion to Strike

After Plaintiff filed his response to the motion for summary judgment, Defendant filed a motion to strike two of his exhibits: his affidavit and the EEOC right to sue letter.

#### 1. Plaintiff's Affidavit

Defendant argues that Plaintiff's affidavit does not satisfy the personal knowledge requirement of Fed. R. Civ. P. 56(e), and the Court must therefore disregard it. *See Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) (holding that a court should disregard documents in support of a motion for summary judgment that do not satisfy Rule 56(e)). Specifically, Defendant objects to the following two paragraphs:

> 16. Three other white couriers, Nancy Yackel, Walt Beauchamp, and Steve Langley were also taken off the road for driving violations, but Ms. Yackel and Mr. Beauchamp were immediately placed in full-time non-driving positions.
>
> 17. Neither Ms. Yackel nor Mr. Beauchamp were denied hours or asked to sign a contract agreeing to not resume driving activities for a period of time longer than required by Federal Express policy.

(Pl. Aff., Pl. Ex. A. ¶ ¶ 16, 17.)

Summary judgment is appropriate even considering Plaintiff's entire affidavit, so the Court need not rule on whether the affidavit is proper. Simply, the affidavit does not affect the outcome of this case.

### 2. The EEOC Right to Sue Letter

Defendant also moves to strike Plaintiff's Exhibit F, the EEOC right to sue letter, because it is hearsay. The Court disagrees. The letter is not hearsay for the purpose it is offered, that is to show the procedural fact that the EEOC issued the letter on a certain day. It is not offered to show the truth of the matter asserted in the letter. Therefore, the Court DENIES Defendant's motion to strike the letter.

## IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

Defendant's Motion for Summary Judgment is GRANTED; and

this case is DISMISSED.

                    s/NANCY G. EDMUNDS
                    Nancy G. Edmunds
                    United States District Judge

Dated: July 8, 2004